UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CYNTHIA DURAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>M.S.T.A.S. LTD. /aka/ STAT MEDICAL ANSWERING SERVICE, and DAVID KUBE in his individual and official capacity,<br><br>Defendants. | Civil Action No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMAND** |

Plaintiff, individually and on behalf of all others similarly situated, by her attorneys, Jafri Law Firm and The Law Office of Christopher Q. Davis, PLLC, allege, upon personal knowledge and upon information and belief as to other matters, as follows:

**NATURE OF ACTION**

1.  This is an FLSA collective action brought by Plaintiff Cynthia Duran (the "Named Plaintiff") on her own behalf, and on behalf of those individuals who opted-in to the FLSA Collective by filing an Opt-in Form with this Court (the "Opt-in Plaintiffs", together with the Named Plaintiff the "FLSA Collective"). The FLSA Collective is comprised of individuals who were or are employed by M.S.T.A.S. LTD (hereinafter "MSTAS"), as non-exempt hourly Customer Service Representatives and were denied overtime premium compensation for hours worked in excess of forty hours per week.

2.  Plaintiffs seek relief pursuant to the applicable provisions of the NYLL and/or FLSA to remedy the Defendants' failure to pay all wages due, in addition to injunctive relief.

## PARTIES

3. Plaintiff Cynthia Duran was employed by Defendants as a spanish- speaking customer service representative. Ms. Duran began her employment with the Defendants on or around March of 2017 and presently resides in Jersey City, New Jersey. She was employed by Defendants in New York, New York.

4. MSTAS's principal place of business is located at 224 W 35th St, Ste 1310, New York, New York 10001. MSTAS also have a regional office located at 3620 Clifford St, Portsmouth, VA 23707.

5. Defendant David Kube is the President and Chief Executive Officer of MSTAS. He lives at 6900 Tavistock Lakes Blvd., STE 400, Orlando, FL, 32827.

6. Defendant MSTAS is a medical answering service with call centers located in New York, New York and Portsmouth, Virginia.

7. Defendants' services included: (1) assisting the medical and healthcare industry by managing their patients, prospects and colleagues' calls; (2) providing after-hours office and emergency dispatching support, as well as business-hour reception support; and (3) providing general customer service.

8. At all relevant times, Defendants have met the definition of Plaintiffs' "employer" under Section 3(d) of the FLSA, 29 U.S.C. § 203(d) and NYLL §190(3).

9. Upon information and belief, Defendant Kube maintains control, oversight, and direction over their operations and employment practices, including commonly managed human resources, benefits, and labor functions.

10. Upon information and belief, Defendant David Kube maintain control, oversight, and direction over payroll, scheduling, and hiring and firing of employees.

11. Defendants' gross volume of business is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

## JURISDICTION & VENUE

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. The Court also has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1332.

13. In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 207 et seq.

14. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

15. Venue is proper in the United States District Court, Southern District of New York pursuant to 28 U.S.C. § 1391, because the wage violations which give rise to Plaintiffs' claims occurred in this District.

16. This Court has personal jurisdiction over Defendants because they reside in and routinely transact business in New York.

## WAGE AND HOUR FLSA COLLECTIVE AND INDIVIDUAL NYLL FACTUAL ALLEGATIONS

17. Upon information and belief, during the class period, Defendants directly employed approximately one hundred (100) hourly customer service representatives including 40 who worked in New York.

18. Plaintiff Duran and the putative class of customer service representatives answered patients' calls; provided after-hours office and emergency dispatching support.

19. On or about March of 2017, Ms. Duran started working for Defendants as a Spanish-speaking customer service representative. As a spanish speaker, Ms. Duran was promised an additional fifty cents abover her regular rate of pay for customer service representatives.

20. On or around March of 2017, Ms. Duran's pay was $11.00 per hour. Beginning on or about October of 2017, her pay increased to $12.25 per hour. On or around January of 2018, it increased to $13.50. On or around January 2019, Ms. Duran began making $15.00 per hour. However, after her wage increased to $15.00 per hour, she was never paid the additional fifty cents for working as a Spanish-speaking interpreter.

21. Plaintiff and the putative class of Customer Service Representatives are not paid a lawful overtime premium of time of one and one half of their regular rate of pay.

22. Throughout her employment, Ms. Duran's schedule varied. Her shift frequently changed. For example, most recently, her schedule changed from 9 AM-6 PM to 12 PM-8 PM.

23. Ms. Duran entered her time into a database system that her supervisor had access to. Her supervisor frequently edited her timesheet to reflect less overtime than she was actually working. As such, her paystubs are inaccurate.

24. Additionally, customer service representatives do not always take a break during their shifts. During the busy seasons, customer service representatives are required to answer urgent phone calls and, because Defendants are short-staffed, the customer service representatives must work during their breaks to meet their job obligations. For example, on New Year's Day, Ms. Duran had to work during her lunch break because of her busy workload. Defendants did not compensate her for working during her lunch break and did not pay her overtime, even though Ms. Duran worked over forty hours that week.

4

25. Usually, Ms. Duran worked overtime twice a month. Ms. Duran worked over forty hours per week during the weekends and holidays. Because the weekends and holidays were the busiest times and the company was short staffed, if there weren't enough employees to cover a shift, Ms. Duran would be asked to stay past her scheduled shift. Most recently Ms. Duran worked overtime during the month of January 2020. However, she was not paid lawful overtime wages.

26. Further, Ms. Duran and all other customer service representatives were required to attend unpaid "off the clock" management meetings one time a week until an employee complained.

27. When Ms. Duran was paid overtime, Defendants did not pay her the correct rate. For example, on Ms. Duran's paystub dated January 25, 2018, it shows that she worked 0.75 hours of overtime, however, she was only paid $13.78. Because Ms. Duran's overtime rate should have been $20.25, her pay should have been $15.18 instead of $13.78.

28. Defendant also had an unlawful practice of haphazardly labeling overtime hours as "retroactive pay" on an employee's paystubs. On Ms. Duran's paystub dated June 17, 2019, one description is "retroactive pay," which for the period was $26.25. When Ms. Duran asked her managers what the "retroactive pay" was for, she never received an answer. And despite Ms. Duran working throughout her lunch breaks, and working longer than her regular 8-hour shifts throughout the busy seasons, she was rarely paid the correct overtime rate and rarely paid overtime at all.

29. Plaintiffs also had to pay for their own work equipment. When Plaintiffs began working for Defendants, they were required to sign a contract, saying that they would pay for headsets, which was necessary equipment for a customer service representative in a call center.

Defendants deducted the cost of the headsets from Plaintiff's pay. On Ms. Duran's paystub dated July 27, 2017, there is a miscellaneous deduction of $30.00, which was a deduction for headsets Ms. Duran needed for her job.

**Defendants Have Knowledge of the Widespread Overtime Practices**

30. Defendants' knowledge of the widespread nature of the overtime violations alleged herein is well known among employees and management.

31. Ms. Duran has made several attempts to speak with management about the unlawful overtime practices.

32. For example, Ms. Duran complained to Operations Manager, Yvette Bermudez about not being paid time and a half on holidays. Since working for Defendants, Ms. Duran has worked almost every holiday, yet has never been paid the correct overtime rate and rarely paid overtime. Yvette Bermudez said she would look into it, and once said that she would speak to the District Manager, Victoria Figueroa, about it.

33. Defendants also have a policy of taking employees off the schedule if they complained, reducing their incentives to voice concerns about the unlawful overtime violations.

34. On March 31, 2020, a day after speaking to CEO David Kube, the operations manager told Ms. Duran that Mr. Kube wanted to speak to her again. When Ms. Duran asked why, her manager said it was about Ms. Duran answering calls.

35. Ms. Duran told the operations manager that she spoke to Mr. Kube and would not be answering spanish calls unless she was paid the correct rate of $15.50. As a result, Mr. Kube took Ms. Duran off of the schedule "until further notice," constructively firing her.

**FLSA COLLECTIVE ALLEGATIONS**

36. Plaintiffs incorporate by reference all of the factual allegations made in the preceding paragraphs.

37. The FLSA Collective Class will include all non-exempt hourly customer service representatives in New York and Virginia who were denied overtime premium compensation for hours worked in excess of forty hours per week during the three year statute of limtiations period for the reasons setforth herein.

38. The Collective Class will also include all employees who have been employed by Defendants as customer service representatives within three years prior to this action's filing date through the date of the final disposition of this action (the "Collective Class Period").

39. Defendants employed the FLSA Collective during the three-year statute of limitations period for violations of the FLSA.

40. Defendants classified the FLSA Collective as nonexempt for the purposes of the FLSA, paying them an hourly wage rather than an annual salary.

41. Defendants unlawfully required the FLSA Collective to attend meetings, working during unpaid breaks and after their shift off the clock and without compensation.

42. At all times during the statute of limitations period, Defendants have not paid the FLSA Collective lawful overtime premiums for all hours worked in excess of 40 hours in a work week and/or minimum wage compensation for hours worked under 40 in a work week.

43. The FLSA Collective has been damaged by Defendants' company-wide policy of failure to pay overtime compensation and forcing Plaintiffs to work "off the clock" and without compensation before and after their shifts, which they knowingly suffered and permitted.

44. As such, the FLSA Collective suffered damages for unpaid earned overtime wages under the FLSA in each of the weeks they worked during the statute of limitations period.

45. Defendants were aware or should have been aware that the law required it to pay non-exempt employees, including the FLSA Collective, an overtime premium of 1 and ½ times their regular rate of pay for all work-hours Defendants suffered or permitted them to work in excess of 40 per workweek.

46. Defendants' conduct, as set forth in this Complaint, was willful and in bad faith, and has caused significant damages to the FLSA Collective.

47. Defendants are liable under the FLSA for failing to properly compensate Plaintiffs.

## NEW YORK LABOR LAW ALLEGATIONS

48. Plaintiffs incorporate by reference all of the factual allegations made in the preceding paragraphs.

49. The NYLL Class will include all non-exempt hourly customer service representatives in New York State who were denied overtime premium compensationfor hours worked in excess of forty hours per week during the six year statute of limtiations period for the reasons setforth herein, suffered illegal deductions from pay, and who were not provided a wage notice or accurate wage statements as required under ther NYLL for the same six-year statute of limitations period.

50. Plaintiffs have been damaged by Defendants' company-wide policy of failure to pay overtime compensation and forcing Plaintiffs to work "off the clock" and without compensation before the start of their shifts, which they knowingly suffered and permitted.

51. Defendants have violated NYCRR 142-2.2 and NYLL §§ 191, 193 by failing to pay Plaintiffs at least one and one-half times the New York state minimum wage for all hours worked over 40 during the relevant statute of limitations periods pursuant to the same illegal practices and policies alleged above.

52. Defendants also unlawfully deducted $30.00 for necessary headset equipment from Plaintiff and the Putative Collective Class' minimum wages in violation of NYLL Section 193.

### AS AND FOR A FIRST CAUSE OF ACTION
**(Unlawful Failure to Pay Overtime Compensation under the Fair Labor Standards Act)**

53. Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

54. At all relevant times, Defendants have been an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 20 U.S.C. § 203. At all relevant times, Defendants have employed and continue to employ employees. At all relevant times, upon information and belief, Defendants have gross operating revenues in excess of $500,000.00.

55. The FLSA requires each covered employer to compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per work week.

56. During their employment with Defendants, within the applicable statute of limitations, the FLSA Collective members worked in excess of forty hours per work-week without lawful overtime compensation.

57. Despite the hours worked by members of the FLSA Collective, Defendants willfully, in bad faith, and in knowing violation of the Federal Fair Labor Standards Act, failed and refused to pay them overtime compensation.

58. The FLSA Collective members were not paid FLSA mandated overtime premiums uniformly and based on the policies and practices articulated above.

59. Also, by failing to accurately record, report, and/or preserve records of hours worked by the FLSA Collective, Defendants have failed to make, keep, and preserve records with respect to each of their employees sufficient to determine their wages, hours, and other conditions and practices of employment, in violation of the FLSA, 29 U.S.C. § 201, et seq.

60. Defendants have failed to make a good faith effort to comply with the FLSA with respect to its compensation to the FLSA Collective.

61. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C §§ 216(b) and 255(a).

62. Because Defendants' violations of the FLSA were willful, a 3-year statute of limitation applies, pursuant to 29 U.S.C. § 255.

63. The FLSA Collective seeks recovery of their attorneys' fees and costs to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

### AS AND FOR A SECOND CAUSE OF ACTION
**(Failure to Pay Lawful Overtime Premiums in Violation of NYCRR § 142.2.2 and Article 19 of the NYLL)**

64. Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

65. At all relevant times, Plaintiffs were employees and the Defendants have been employers within the meaning of the New York Labor Law.

66. The overtime wage provisions of Article 19 of the New York Labor Law and its supporting regulations apply to Defendants.

67. Defendants have failed to pay Plaintiffs the overtime wages to which they were entitled under the New York Labor Law.

68. By Defendants' failure to pay Plaintiffs premium overtime wages for hours worked in excess of 40 hours per week, they have willfully violated the New York Labor Law Article 19, §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R. Part 142.

69. Also, Defendants have violated NYCRR 142-2.2 and NYLL §§ 191 and 193 by failing to pay Plaintiffs at least one and one-half times the minimum wage for all hours worked over 40 in any workweek during the relevant statute of limitations periods.

70. Due to Defendants' violations of the New York Labor Law, Plaintiffs are entitled to recover from Defendants their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## AS AND FOR A THIRD CAUSE OF ACTION
**(Failure to Furnish Wage Notices and Accurate Wage Statements in Violation of NYLL §195)**

71. Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

72. At all relevant times, Plaintiffs were employees and the Defendants have been employers within the meaning of the New York Labor Law.

73. The recording keeping provisions of Article 19 of the New York Labor Law and its supporting regulations apply to Defendants.

74. Defendants did not provide Plaintiffs with a legally sufficient wage statement upon the payment of wages, as required by NYLL § 195(3).

75. NYLL §195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria required under the NYLL.

76. Defendants also failed to provide notice of compensation terms at the start of their employment as required by the NYLL.

77. As a result of Defendants' unlawful conduct, Plaintiffs are entitled to an award of damages pursuant to NYLL § 198, in an amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by NYLL § 663.

**AS FOR A FOURTH CAUSE OF ACTION**
(Unlawful Deductions for Necessary **Headset Equipment in violation of the New York Labor Law Section 193 and the New York City Code of Rules and Regulations**)

78. Plaintiff, on behalf of herself and the Class Members, repeat, reallege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

79. At all relevant times, Plaintiff and Class Members were employees and Defendants were employers within the meaning of the New York Labor Law.

80. Defendants required Plaintiffs and the Class Members to purchase and wear a certain type of headset costing $30.00 when they worked for Defendants, but did not reimburse Plaintiffs or the Class Members for the equipment as required by New York law.

81. Accordingly, Defendants are required to compensate Plaintiffs and the Class Members for the equipment in statutorily proscribed amounts.

82. Due to Defendants' NYLL violations, Plaintiffs and the Class Members are entitled to recover as damages from Defendants the statutorily proscribed pay amounts for which Plaintiffs

and the Class Members incurred, plus liquidated damages, damages for unreasonably delayed payment of wages, interest, reasonable attorneys' fees, and costs and disbursements.

## AS FOR A FIFTH CAUSE OF ACTION
### (Unlawful Retaliation for Objection to Violation of the Fair Labor Standard Act Against Plaintiff)

83. Ms. Duran repeats, realleges and incorporate by reference the foregoing allegations as if set forth fully and again herein.

84. Ms. Duran made complaints to Defendants that she was not paid overtime premiums as required by the FLSA.

85. Defendants responded to Ms. Duran's complaints by removing her from the schedule "until further notice."

86. Under FLSA § 218(c)(5), it is unlawful to retaliate against someone because they "objected to, or refused to participate in, any activity, policy, practice, or assigned task that the employee (or other such person) reasonably believed to be in violation of any provision of this title (or amendment), or any order, rule, regulation, standard, or ban under this title (or amendment)." 29 U.S.C.A. § 218c (West) –however, this is precisely what Defendants did.

87. Ms. Duran brought to the Defendants' attention her claims that she was not paid in accordance with FLSA standards and Defendants responded by removing her from the schedule.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

A. That Defendants are found to have violated the provisions of the New York Labor Law as to Plaintiffs;

B.     That Defendants are found to have violated the Federal Fair Labor Standards Act as to Plaintiffs;

C.     That Defendants' violations as described above are found to be willful;

D.     An award to Plaintiffs for the amount of unpaid wages owed, including interest thereon, and penalties, including liquidated damages, subject to proof at trial;

E.     That Defendants further be enjoined to cease and desist from unlawful activities in violation of the FLSA and NYLL;

F.     An award of reasonable attorneys' fees and costs pursuant to the NYLL and 29 U.S.C. § 216 and/or other applicable law; and

G.     For such other and further relief, in law or equity, as this Court may deem appropriate and just.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury as to all issues so triable.

DATED: October 28, 2020

                                     /s/Farva Jafri_____

Farva Jafri, Esq.
Jafri Law Firm
50 Evergreen Row
Armonk, NY 10504
(800)593-7491 (main)
(224)228-6721 (fax)

Christopher Q. Davis, Esq.
Rachel M. Haskell, Esq.
The Law Office of Christopher Q. Davis
80 Broad St, Suite 703
New York, New York 10004
646-430-7930 (main)
646-349-2504 (fax)

*Counsel for Plaintiffs*